**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-CIV-61550-BLOOM/Valle**

BLUE OCEAN CORALS, LLC,

      Plaintiff,

vs.

PHOENIX KIOSK, INC., DUSTSHIELD
LLC, and AMERICAN PRODUCTS, LCC,

      Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** came before the Court upon the Motion of Defendants Dustshield, LLC ("Dustshield") and American Products, L.L.C. ("American Products", together, "Defendants") to Dismiss on the basis of *forum non conveniens*, ECF No. [6] (the "Motion").  The Court has reviewed the Motion, all supporting and opposing filings, and the record in this case, and is otherwise fully advised as to the premises.  For the reasons set forth below, the Court **GRANTS** the Motion.

**I.  BACKGROUND**

This case arises out of a contractual relationship for the manufacture of kiosks to house and develop user interface software to operate a proprietary robotic water testing system. Plaintiff Blue Ocean Corals, LLC ("Plaintiff" or "Blue Ocean") filed its Complaint on May 27, 2014 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida against Defendants and Phoenix Kiosk, Inc. ("PKI").  *See* ECF No. [4-1] (the "Complaint").  On

CASE NO.  14-CIV-61550-BLOOM

July 7, 2014, Defendants removed the action to this Court.  ECF No. [1].  Defendants filed the instant Motion on July 14, 2014; Plaintiff timely responded, ECF No. [12] (the "Response"), and Defendants timely replied, ECF No. [15] (the "Reply").

Plaintiff is a Florida corporation with its principal place of business – including all facilities, operations and employees – located in Broward County, Florida.  Compl. ¶ 2; ECF No. [12-1] ¶ 4.  Plaintiff developed a proprietary robotic water testing system identified as the "WaterLab," and in December 2012, sought proposals to manufacture a metal kiosk to house the WaterLab and to develop integrated user interface software to enable the system to be accessed through the metal kiosk.  *See* Compl. ¶¶ 8, 10, 12.

Prior to any relationship with Plaintiff, in December 2010, PKI, a Nevada corporation with operations in Arizona, merged into Phoenix Kiosk, LLC ("PKLLC"), a validly organized Nevada limited liability company.  *See* ECF No. [15-1].  PKLLC was registered to do business in Arizona.  *See* ECF No. [15-2].  The sole managing member of PKLLC was Secure Medical, Inc. ("SMI"), a Nevada corporation.  *See* ECF Nos. [15-1], [15-2].  On or about February 28, 2013, PKLLC sold its assets to Dustshield, a Missouri limited liability company affiliated with American Products.  *See* ECF No. [6-1] Ex. A ¶¶ 5, 7-8.  Included in that sale was the right of Dustshield to use the "Phoenix Kiosk" trade name.  *Id*. ¶ 5.  Following the sale, PKLLC changed its name to SMI-PK, LLC.  *Id*. ¶¶ 5-6.

Plaintiff responded to PKI's marketing, advertisements and online solicitations with respect to the services needed to develop the WaterLab product, and negotiations between Plaintiff and PKI began in December 2012.  Compl. ¶ 8.  On December 6, 2012, Plaintiff and PKI entered into a Mutual Confidentiality Agreement to restrict the use and disclosure of

CASE NO.  14-CIV-61550-BLOOM

confidential information exchanged in discussions towards "the establishment of a possible business relationship between the parties," i.e., the WaterLab project.  *Id*. ¶ 16; *id*. Exh. C (the "Confidentiality Agreement").  Defendants, by affidavit of American Products' COO, CFO and managing member, also a manager of Dustshield, explain that PKLLC continued to use some of PKI's standard contract forms, such that the Confidentiality Agreement unintentionally references PKI rather than PKLLC.  ECF No. [15-3] ¶ 8.  In March 2013, Dustshield, doing business as Phoenix Kiosk, delivered a price quote and a High Level Systems Requirements document to Plaintiff.  Compl. ¶ 11; ECF No. [6-1] at 9-22.  On or about May 10, 2013, Dustshield, doing business as Phoenix Kiosk,[1] contracted with Plaintiff to develop the user interface software for the WaterLab.  *See* Compl. ¶ 36.  The documents governing the user interface software contract include the March price quote and High Level Systems Requirements, and a purchase order, sales order, and terms and conditions (the "May 10 Terms and Conditions"), the latter three dated as of May 10, 2013.  *See* ECF No. [6-1] Exh. A ¶ 14; ECF No. [6-1] at 5-8, 15.  The May 10 Terms and Conditions contains a Governing Law provision which includes a forum selection clause that provides:

> You [Plaintiff] also agree that venue for any action arising out of or relating to this Agreement shall be in the Superior Courts of Arizona located within Maricopa County.  You hereby submit to the exclusive jurisdiction of those courts and waive and agree not to raise any claim of forum non conveniens.

ECF No. [6-1] at 7.  On or about May 24, 2013, Dustshield, doing business as Phoenix Kiosk, contracted with Plaintiff to manufacture custom kiosks to house the WaterLab system.  Compl. ¶ 36.  The documents governing the kiosk manufacturing contract include a purchase order, sales

---

[1] Defendants maintain that, by April 2013, the Phoenix Kiosk account manager for the WaterLab

CASE NO.  14-CIV-61550-BLOOM

order, and terms and conditions (the "May 24 Terms and Conditions"), all three dated as of May 24, 2013.  *See* ECF No. [6-1] Exh. A ¶ 15.  The May 24 Terms and Conditions contains a forum selection clause identical to that in the May 10 Terms and Conditions.  ECF No. [6-1] at 18. Both Terms and Conditions, which reference the respective purchase orders, were signed and executed by Plaintiff.  ECF No. [6-1] at 8, 18.

Plaintiff asserts several claims against Defendants and PKI in its Complaint:  (i) breach of contract with respect to both the May 10, 2013 and May 24, 2013 orders; (ii) fraudulent inducement; (iii) breach of the Confidentiality Agreement; (iv) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq; (v) intentional interference with contractual relations; (vi) interference with prospective economic advantage; and (vii) violation of the Florida Uniform Trade Secrets Act, Fla. Stat. §§ 688-001 et seq. ("FUTSA").

## II.  DISCUSSION

Through the instant Motion, Defendants seek to dismiss this case in its entirety under the doctrine of *forum non conveniens*, in accordance with the forum selection clauses in the Terms and Conditions, and in the alternative, to dismiss all claims against American Products pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

### A.        Dismissal for *Forum Non Conveniens* in Light of Forum Selection Clause

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."  *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 580 (2013).  As the Supreme Court recently explained, 28 U.S.C. § 1404(a) "is merely a codification of the doctrine of *forum non conveniens*

project informed Plaintiff as to the sale of PKKLLC's assets to Dustshield.  *See* ECF No. [15-3] ¶ 11.

CASE NO.  14-CIV-61550-BLOOM

for the subset of cases in which the transferee forum is within the federal court system.  . . . For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* has continuing application." *Id*.  Furthermore, "courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum" under 28 U.S.C. § 1404(a). *Id*.

Generally, "[t]o obtain dismissal for *forum non conveniens*, 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)).  In addition, the Supreme Court has held that the existence of a forum selection clause is essentially case-dispositive of the section 1404(a) or *forum non conveniens* analysis:

> When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied.

*Atlantic Marine*, *supra*, at 581; *see aslo, GDG Acquisitions*, 749 F.3d at 1028 ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).

This determination stems, in part, from the recognition that a valid forum selection clause represents the parties' *ab initio* agreement as to the most proper forum.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988); *Atlantic Marine*, 134 S. Ct. at 581-82 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the

CASE NO.  14-CIV-61550-BLOOM

litigation."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 16-17 (1972) ("[W]here it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable.").

Ordinarily, while the "burden of demonstrating that an appropriate alternative forum exists is not a heavy one," it does lie squarely "with the party seeking dismissal." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1276 (S.D. Fla. 2001).   While the movant bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted, the existence of a valid forum selection clause governing the claims at issue shifts the burden to the non-movant to establish that dismissal is improper.  *See Espie v. Washington Nat. Ins. Co.*, 2014 WL 2921022, at *10 (M.D. Ala. June 27, 2014).   Indeed, the party seeking to avoid the forum-selection clause bears a "heavy burden of proof" that the clause should be set aside.  *Carnival Cruise Lines*, at 595.

Thus, in considering a motion to dismiss for *forum non conveniens*, as with a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), a court must accept the facts in a plaintiff's complaint as true.  *See*, *e.g.*, *Matuszevoska v. Princess Cruise Lines, Ltd.*, 2007 WL 7728281, at *2 (S.D. Fla. Feb. 12, 2007).   A court may "consider matters outside the pleadings if presented in proper form by the parties" in ruling on a motion to dismiss for *forum non conveniens*.  *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F .Supp. 2d 1344, 1349 (S.D. Fla. 2001); *Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 Fed. App'x 826, 829-30 (11th Cir. 2013) (affidavit in support of motion to dismiss for *forum non conveniens* properly considered); *see also Webb v. Ginn Fin. Servs.*, 500 F. App'x 851, 854 (11th

CASE NO. 14-CIV-61550-BLOOM

Cir. 2012) (consideration of evidence outside the pleading appropriate on Rule 12(b)(3) motion); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents as part of the pleadings for purposes of a Rule 12(b)(6) dismissal").  However, "[w]here conflicts exist between allegations in the complaint and evidence outside the pleadings, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Malik v. Hood*, 2012 WL 1906306, at *1 (S.D. Fla. May 25, 2012) (12(b)(3) motion); *Belik v. Carlson Travel Grp., Inc.*, 2012 WL 4511236, at *3 (S.D. Fla. Oct. 1, 2012) (considering motion to dismiss for *forum non conveniens*, court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff").

While the *Atlantic Marine* analysis presupposes a valid forum-selection clause, *see*, *e.g.*, *Barilotti v. Island Hotel Co.*, 2014 WL 1803374, at *2 (S.D. Fla. May 6, 2014) (court must first determine whether there is a valid forum-selection clause), "forum-selection clauses are presumptively valid and enforceable [absent] a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991)); *see also Bremen*, 407 U.S. at 10 (forum-selection clauses prima facie valid and enforceable as a matter of federal law).  "A forum-selection clause can only be invalidated on a showing of a 'bad faith motive' where the forum was chosen 'as a means of discouraging [parties] from pursuing legitimate claims.'" *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) (quoting *Carnival Cruise Lines*, 499 U.S. at 595).  Furthermore, "a forum

selection clause operates as a separate contract that is severable from the agreement in which it is contained and is enforceable, as long as the forum selection clause itself was not included in the contract because of fraud." *Sachs v. Bankers Life & Cas. Co.*, 2012 WL 1900033, at *2 (S.D. Fla. May 24, 2012) (citing *Rucker v. Oasis Legal Finance LLC*, 632 F.3d 1231 (11th Cir. 2011) ("A forum selection clause is viewed as a separate contract that is severable from the agreement in which it is contained.")).   That is, a forum selection clause is unenforceable only if "the inclusion of that clause in the contract was the product of fraud or coercion."   *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

"Choice clauses will be found unreasonable under the circumstances and thus unenforceable only when: (1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy."   *Lipcon*, 148 F.3d at 1296 (citing *Carnival Cruise Lines*, 499 U.S. at 594-95; *Bremen*, 407 U.S. at 15-18).

Beyond validity, in analyzing the application of a forum-selection clause a court must determine whether the claim or relationship at issue falls within the scope of the clause – by looking to the language of the clause itself – and whether the clause is mandatory or permissive. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Fla. Polk County v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999) (court must further determine whether clause is mandatory or permissive).

**B.      The Forum-Selection Clauses Here Are Valid and Govern Plaintiff's Claims**

Plaintiff brought this action in Florida state court in abrogation of the forum selection clause set forth in the Terms and Conditions.  Defendants therefore seek dismissal of the action from this Court (to which the action was removed) based on the doctrine of *forum non conveniens*.  Plaintiff contends that the forum-selection clause is invalid and unenforceable. Moreover, the Plaintiff claims that it does not apply to the full ambit of claims asserted in its Complaint, namely those claims derivative of the Confidentiality Agreement which predates both Terms and Conditions.

As an initial matter, the forum-selection clauses in the Terms and Conditions are clearly mandatory.  In analyzing the application of a forum selection clause, a court must first determine whether the clause is mandatory or permissive.  *Fla. Polk County v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999).  "A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere.  A mandatory clause, in contrast, 'dictates an exclusive forum for litigation under the contract.'"  *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (quoting *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999)).  The clauses here provide:

> You [Plaintiff] also agree that venue for any action arising out of or relating to this Agreement *shall be* in the Superior Courts of Arizona located within Maricopa County.  You hereby submit to the *exclusive* jurisdiction of those courts and waive and agree not to raise any claim of forum non conveniens.

ECF No. [6-1] at 7; ECF No. [6-1] at 18 (emphasis added).  Not only do the clauses provide that the forum "shall be" the Superior Courts for Maricopa County, Arizona (i.e., leaving no room for the parties to opt in or out of the forum selection), but explicitly state that parties submit to the

CASE NO.  14-CIV-61550-BLOOM

"exclusive jurisdiction" of those courts.  Therefore, if enforceable and applicable to the claims here, the forum selection-clause on its own terms mandates dismissal in favor of  the Arizona state court.

Plaintiff challenges the validity of the forum-selection clauses on two grounds: (i) that they are "fatally flawed" because Plaintiff's contract counterparties had no valid corporate existence at the time of entry into the Terms and Conditions; and (ii) that they were part of a series of agreements into which Plaintiff was fraudulently induced to enter.

First, Plaintiff's argument as to Phoenix Kiosk's "non-existent corporate status" is of no import.  The Terms and Conditions refer to "Phoenix Kiosk" and "Phoenix Kiosk, LLC."  ECF No. [6-1] at 5; ECF No. [6-1] at 16.  Prior to the execution of the two May 2013 service contracts, PKLLC sold its assets to Dustshield, through which Dustshield also acquired the right to use the "Phoenix Kiosk" trade name.  *See* ECF No. [6-1] Ex. A ¶¶ 5, 7-8.  Following the sale, PKLLC continued to exist but changed its name to SMI-PK, LLC.  *Id.* ¶¶ 5-6.  Defendants maintain that Plaintiff knew about the sale of PKKLLC's assets to Dustshield in April 2013.  *See* ECF No. [15-3] ¶ 11.  Even if Plaintiff was unaware of the sale, the user interface software and kiosk manufacturing contracts were entered into by a legally valid entity under a properly used trade name.  *See also* ECF Nos. [15-1], [15-2].

Second and more important, Plaintiff has failed to challenge, let alone present a strong showing, that the forum-selection clauses are themselves invalid.  General allegations of fraud in the inducement of or performance under a contract as a whole are insufficient to render a forum-selection clause invalid.  *See Lipcon*, 148 F.3d at 1297 ("[T]his court will invalidate a choice clause only if 'the *inclusion of that clause in the contract* was the product of fraud or coercion.'"

CASE NO.  14-CIV-61550-BLOOM

(quoting *Schrek v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974)).  Because a forum-selection clause operates as a separate contract severable from the agreement in which it is contained, a forum-selection clause is enforceable regardless of the validity of the overarching agreement unless it was itself included in the contract because of fraud.  *See Sachs*, 2012 WL 1900033, at *2; *Segal*, 763 F. Supp. 2d at 1369.  Plaintiff has not made the requisite "strong showing" that the clauses themselves were the product of or  a vehicle for fraud.

Plaintiff argues that it "was improperly lured into doing business with defendants [by a] pattern of fraudulent conduct and corporate misrepresentations" and that "the specific location based provisions of these agreements – the place of performance and the venue for dispute resolution – were subject to [that] express and detailed fraud."  Resp. at 13-14.  But Plaintiff has not alleged that the forum-selection clauses were themselves the product of fraudulent inducement or improperly included in the contracts to deprive it of some right or ability.  Plaintiff also contends that the Terms and Conditions were entered into without separate consideration and after significant performance by both parties, and improperly directs the dispute to Arizona where none of the corporate defendants are located.   Compl. ¶ 6 n.2.  Plaintiffs are contradicted by their own allegations and belied by the very documents used to support their claims.[2]  The May 10 Terms and Conditions were signed by Plaintiff on that date, the same date on which the corresponding purchase and sales orders were issued.  The same is true for the May 24 Terms and Conditions.   Those sets of documents memorialize a single, integrated transaction.  Plaintiff admits as much in its Complaint.   Compl. ¶ 36.   Separate

_____

[2] The Court has properly considered the parties' affidavit and evidentiary submissions in determining the Motion.  *See MGC Commc'ns*, 146 F. Supp. 2d at 1349; *Cahaba Disaster Recovery*, 534

CASE NO.  14-CIV-61550-BLOOM

consideration for the Terms and Conditions was therefore not required.  *See*, *e.g.*, *Vereen v. Lou Sobh Auto. of Jax, Inc.*, 2012 WL 601217, at *10 (M.D. Fla. Feb. 23, 2012) (multiple documents regarding same subject matter construed as single transaction) (citing *Bragg v. Bill Heard Cheverolet, Inc.-Plant City*, 374 F.3d 1060, 1065-1067 (11th Cir. 2004).  Further, the pre-contract exchange of information contemplated by the Confidentiality Agreement and the March 2013 documents predate the Terms and Conditions. They merely articulated a price quote and systems requirements and do not evidence performance by the parties prior to execution of the Terms and Conditions.  Finally, whether Defendants are located in Arizona (and the Court notes that Plaintiff itself asserts that Defendants operated in Arizona) is irrelevant to determining whether the forum-selection clauses are reasonable.  *See Lipcon*, 148 F.3d at 1296 (listing circumstances where forum-selection clause may be found unreasonable).

The forum-selection clauses are valid. Plaintiff has failed to present extraordinary circumstances preventing their application.  The Court has considered the Plaintiff's contention that the clauses do not encompass its entire relationship with Defendants or extend to the entirety of this action.  Specifically, Plaintiff argues that the forum-selection clauses have no application to the Confidentiality Agreement – which predates the Terms and Conditions by some six months – and consequently to the causes of action derivative of that agreement.  Liberally construed, that would include the breach of contract claim with respect to the Confidentiality Agreement and the FUTSA claim, and perhaps the intentional interference with contractual relations and interference with prospective economic advantage claims as well.

---

Fed. App'x at 829-30.

CASE NO.  14-CIV-61550-BLOOM

To determine if a claim or relationship falls within the scope of a forum-selection clause, a court must look to the language of the clause itself.  *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012); *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (regarding forum-selection clause, "the plain meaning of a contract's language governs its interpretation").  Where a clause refers to claims or actions "arising under or in connection with" the contract, the clause is taken to include "all causes of action arising directly or indirectly from the business relationship evidenced by the contract."  *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (holding that clause in question encompassed both contract and tort claims); *see also Vernon v. Stabach*, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("[W]here the contracts at issue contain a broad forum-selection clause applying to 'any suit arising out of or in connection with' an agreement, federal courts have had no trouble finding statutory and tort claims arising directly or indirectly from the relationship evidenced by the contract to fall within the scope of the clause." (citations omitted)).  A claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties."  *Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1116 (11th Cir. 2001).  However, a but-for relationship between the claims and the contract at issue, while indicative, does not necessarily mean the claims "relate to" the contract.  *Bahamas Sales*, 701 F.3d at 1341.  "The Eleventh Circuit has indicated that a claim is more likely to be 'related to' a contract when that contract is 'the central document in the parties' relationship.'"  *Espie v. Washington Nat. Ins. Co.*, 2014 WL 2921022, at *6 (M.D. Ala. June 27, 2014) (quoting *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008)).

13

CASE NO.  14-CIV-61550-BLOOM

Furthermore, where parties have entered into multiple contracts with differing forum-selection provisions governing the same transaction or relationship, a court must decide based on the particular facts which clause governs for purposes of, e.g., dismissal based on *forum non conveniens*. *See Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006) ("Where, as here, the two sides have put forth different contracts, each containing a forum selection clause designating a different forum, and the parties do not dispute the facts which gave rise to those two conflicting contracts, the court must decide as a matter of law on the agreed facts which forum selection clause governs."); *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 395 (5th Cir. 2002) (forum selection clause in one contract had to be read "in the context of the entire contractual arrangement [to] give effect to all of the terms of that arrangement").

The operative question here is whether the forum-selection clauses in the Terms and Conditions cover the Confidentiality Agreement with respect to the claims asserted by Plaintiff here.  The Court concludes that they do.  Again, the clauses here provide:

> You [Plaintiff] also agree that venue for any action *arising out of or relating to* this Agreement shall be in the Superior Courts of Arizona located within Maricopa County.  You hereby submit to the exclusive jurisdiction of those courts and waive and agree not to raise any claim of forum non conveniens.

ECF No. [6-1] at 7; ECF No. [6-1] at 18 (emphasis added).  Courts have construed broad "arising out of" language in forum-selection clauses, such as the language here, to encompass contract, tort and statutory claims arising directly or indirectly from the business relationship evidenced by the contract.  *See Stewart*, 810 F.2d at 1070; *Vernon*, 2014 WL 1806861 at *4.  Even if some of the allegations contained in Counts I and IV of the Complaint pertain to the disclosure of proprietary and confidential information arguably connected to the Confidentiality Agreement,

those allegations also "arise from" the business relationship evidenced by the Terms and Conditions.  Counts II, V and VI bear no relation to the Confidentiality Agreement.  Those five claims without question fall within the scope of the forum-selection clauses.

Further, the Confidentiality Agreement itself, and any causes of action derived directly from it (i.e., Counts III and VII), "relate to" the subsequent service contracts and relationship anticipated and intended by the Confidentiality Agreement itself.  *See*, *e.g.*, *Swisher Int'l, Inc. v. ISA Chicago Wholesale, Inc.*, 2009 WL 1405177 (M.D. Fla. May 19, 2009) (initial agreement contemplating future relationship connected with that relationship).  A claim is best understood as "related to" a contract when that contract is "the central document in the parties' relationship." *Triple I*, 533 F.3d at 1347.  On its own terms, the Confidentiality Agreement was preliminary and anticipatory.  The parties entered into it to facilitate the software and manufacturing services contracts.  It pertained to the exchange of confidential information towards "the establishment of a possible business relationship between the parties."  Compl. Exh. C.  The May 10 and May 24 contracts represent the culmination and consummation of that business relationship.  The documents which comprise that contractual relationship – including the Terms and Conditions – are the central documents in the relationship pursuant to which Plaintiff is suing Defendants in this action.  The Confidentiality Agreement is therefore governed by the forum-selection clauses.

The Court has considered the interrelationship between the Confidentiality Agreement, the two subsequent service contracts and the unity of the business relationship between the parties defined by and across all of those agreements.  Even if Plaintiff's claims for breach did not relate to the service contracts due to the parties' relationship, the Court would still give effect to the forum-selection clauses in the Terms and Conditions.  *See Asoma*, 467 F.3d at 822;

CASE NO.  14-CIV-61550-BLOOM

*Motorola*, 297 F.3d at 395.  Plaintiff's theory of the case is that Defendants, from start to finish, engaged in an integrated, elaborate scheme and a series of interconnected misrepresentations to defraud Plaintiff.  *See* Compl. ¶¶ 13, 66; Resp. at 2, 7, 13.  Plaintiff therefore characterizes the parties' relationship and the set of transactions between the parties as fundamentally interrelated. It logically follows that the forum-selection clauses in the Terms and Conditions would apply to all of the claims asserted in this action.

In light of the valid forum-selection clauses in the Terms and Conditions, which govern all of the claims asserted by Plaintiffs here, the doctrine of *forum non conveniens* mandates dismissal of the action in favor of refiling in the Superior Courts for Maricopa County, Arizona.

### C.    Dismissal For *Forum Non Conveniens* Absent Forum-Selection Clause

Because the Court determines that the forum-selection clauses in the Terms and Conditions encompass all claims asserted in this action, the Court need not engage in the traditional *forum non conveniens* analysis.  However, Defendants would meet their burden under that analysis as well.

As noted above, to obtain dismissal for *forum non conveniens* absent a forum-selection clause, the moving party must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions*, 749 F.3d at 1028 (quoting *Leon*, 251 F.3d 1310-11).  The availability of an adequate alternate forum is a threshold requirement; "[o]rdinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).  Dismissal for *forum non conveniens* is appropriate where "the trial court finds

16

CASE NO.  14-CIV-61550-BLOOM

that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice."  *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009).  "The plaintiffs' forum choice alone is not dispositive . . . it is ultimately only a proxy for determining the convenience of litigating in one forum instead of another, and that, at bottom, 'the central focus of the forum non conveniens inquiry is convenience.'"  *Id.* at 1294 (quoting *Piper*, 454 U.S. at 249-50).  The relevant private-interest factors considered are:

> [1] the relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and [3] the cost of obtaining attendance of willing, witnesses; [4] possibility of view of premises, if view would be appropriate to the action; . . . [5] enforceability of a judgment. . . [6] all other practical problems that make trial of a case easy, expeditious and inexpensive

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see Aldana*, 578 F.3d at 1292 (reciting same list).

The Arizona state courts offer an adequate alternative forum for adjudicating Plaintiff's claims.  Defendants have conceded that those courts have personal jurisdiction over them, and have stated that they are amenable to process in Arizona.  *See* Mtn. at 12; Repl. at 14.  Plaintiff will therefore suffer no meaningful inconvenience of prejudice in reinstating its action in Arizona.

The private factors weigh heavily in favor of the Arizona forum.  In the first instance, Plaintiff only argues that the forum-selection clauses do not apply to the Confidentiality Agreement and its attendant causes of action.  However,  the clauses' admitted validity as to the bulk of Plaintiff's claims support the convenience of litigating in Arizona.  Furthermore, litigating in Arizona would provide easy access to proof:  Defendants state and Plaintiff does not

CASE NO.  14-CIV-61550-BLOOM

rebut that Defendants' employees who managed the WaterLab project are located primarily in Arizona (none are located in Florida), *see* ECF No. [6-1] Exh. A ¶¶ 10-13; Plaintiff's suit related to Defendants' facilities in Arizona, *see* Compl. ¶¶12, 27; electronic and other records relevant to this action are located in Arizona, *see* ECF No. [15-3] ¶ 20; and Dustshield continues to operate in Arizona, *id*.  Plaintiff is located in Florida, but has provided no other connection between Florida and this action relevant to the convenience analysis.  Further, Plaintiff identifies several locations potentially relevant to litigating its claims – England, Taiwan, Nevada, Missouri, *see* Compl. ¶¶ 6, 17-18, 54, Resp. 21 – but offers no countervailing reason why litigating in Florida would be more convenient.

The public factors are relevant only where "the balance of private factors is at or near equipoise," *Aldana*, 578 F.3d at 1289, but provide no greater support for a Florida forum over one in Arizona.  For example, the Governing Law provisions in both Terms and Conditions provide for the application of California law.  *See* ECF No. [6-1] at 7; ECF No. [6-1] at 18.  This is not a localized controversy where it is particularly important to have the lawsuit resolved in Florida.  In total, the traditional *forum non conveniens* analysis also favors granting Defendants' Motion.

### III. CONCLUSION

Because the parties' contractual forum-selection clauses are valid and govern all claims asserted by Plaintiff here, Defendants' Motion to Dismiss on the basis of *forum non conveniens* must be granted.[3]

---

[3] The Court therefore will not consider Defendants' Motion to Dismiss as to American Products for failure to state a claim under Rule 12(b)(6).

18

CASE NO.  14-CIV-61550-BLOOM

Consistent with the foregoing, it is **ORDERED AND ADJUDGED** that

      1.     Defendants Dustshield, LLC and American Products, L.L.C.'s Motion to Dismiss, ECF No. [6] is **GRANTED**.

      2.     Plaintiff Blue Ocean Corals, LLC's Complaint, ECF No. [4-1] is **DISMISSED** in favor of the Superior Courts of Maricopa County, Arizona.

      3.     The Clerk is directed to **ADMINISTRATIVELY CLOSE** this case.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 19th day of September, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record

19